IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


VERIZON NORTHWEST, INC.,                    09-CV-72-BR

          Plaintiff,

                                            OPINION AND ORDER

v.


MAIN STREET DEVELOPMENT,
INC., an Oregon corporation;
HANS J. VATHEUER; and the
MAIN STREET/VATHEUER
PARTNERSHIP, an Oregon
partnership,

          Defendants.


JAY T WALDRON
CARSON BOWLER
WILLIAM J. OHLE
Schwabe Williamson & Wyatt, PC
1600-1900 Pacwest Center
1211 S.W. Fifth Avenue
Portland, OR 97204
(503) 796-2945

          Attorneys for Plaintiff


1 - OPINION AND ORDER

**THOMAS H. CUTLER**
Harris Berne Christensen, LLP
5000 S.W. Meadows Road
Suite 400
Lake Oswego, OR 97035
(503) 968-1475

       Attorneys for Defendant Main Street Development, Inc.

**MICHAEL T. WISE**
**MARCUS H. REED**
Michael Wise and Associates, P.C.
806 S.W. Broadway
800 Jackson Tower
Portland, OR 97205
(503) 224-8422

       Attorneys for Defendants Hans J. Vatheuer and Main
       Street/Vatheuer Partnership

**BROWN, Judge.**

This matter comes before the Court on Plaintiff Verizon Northwest, Inc.'s Motion (#27) for Partial Summary Judgment; the Cross-Motion (#36) for Summary Judgment of Defendants Main Street/Vatheuer Partnership and Hans J. Vatheuer; and Defendant Main Street Development, Inc.'s Cross-Motion (#54) for Summary Judgment.

For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** Plaintiff Verizon's Motion for Partial Summary Judgment, **GRANTS in part** and **DENIES in part** the Cross-Motion for Summary Judgment of Defendants Main Street/Vatheuer Partnership and Hans J. Vatheuer, and **GRANTS in part** and **DENIES in part**

2 - OPINION AND ORDER

Defendant Main Street Development's Cross-Motion for Summary
Judgment.

## BACKGROUND

The following facts are taken from the parties' Stipulated
Agreed Facts and Exhibits unless otherwise noted:

Verizon is an "Incumbent Local Exchange Carrier" under the
Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56
(codified as amended in various sections of U.S.C. Titles 15, 18,
and 47).  Verizon provides telecommunications services throughout
Oregon.  It is a regulated "rate-of-return" public utility, and,
therefore, its tariffs are reviewed and approved by the Oregon
Public Utility Commission (PUC).

Main Street Development is in the business of developing
real-estate projects, including residential housing.

In 2005 Vatheuer entered into an oral development agreement
with Main Street Development.  The agreement provided:

1.    Vatheuer would purchase property at 19755 Alexander
      Street, Beaverton, Oregon;

2.    Main Street Development would develop townhomes on the
      Alexander Street Property;

3.    Main Street Development would seek and obtain all
      necessary government approvals for the development of
      townhomes on the Alexander Street Property;

4.    Main Street Development would proceed with horizontal

3 - OPINION AND ORDER

preparation of lots, infrastructure construction, and
vertical construction of the townhomes; and

5.    Vatheuer would loan funds to Main Street Development
for development and construction costs of the project.

On April 27, 2006, Main Street Development obtained a
Washington County Land Use Decision that "approved with
conditions" the development of townhomes on the Alexander Street
Property.  One of the conditions of approval was that Main Street
Development would widen Alexander Street to meet Washington
County's Uniform Road Improvement Design standards.

On August 22, 2007, in connection with the Land Use
Decision, Vatheuer entered into a "Public Improvement Contract"
with Washington County in which Vatheuer agreed to "provide
public improvements [as noted] in conformance with [the Community
Development Code] and agree[d] to maintain an assurance in the
amount of $70,020.00."  Decl. of William Ohle, Ex. 21 at 1.
Vatheuer also agreed "if work on the subject improvements of this
contract is abandoned, incomplete or deficient . . . after
March 30, 2008, County may collect the assurance described."
Ohle Decl., Ex. 21 at 2.

To satisfy the condition requiring Alexander Street to be
widened, Main Street Development retained W.B. Wells Engineering
to prepare site plans for the development.  It was determined
that an underground telecommunications facility and cross-box

belonging to Verizon located within the right-of-way along the
Alexander Street property needed to be relocated in order to
widen Alexander Street as required by Washington County.

On September 5, 2007, Washington County Engineer Gregory
Miller sent Verizon a letter noting the conditions Washington
County imposed on the development of the Alexander Street
property and advised Verizon:  "Per ORS 758.010 . . . Washington
County directs your utility to relocate your [facilities] at your
expense so that [they do] not interfere with the construction of
the County road.  Please do so in the next 60 days so the
developer can complete his road work prior to winter."  Verizon
then advised Main Street Development that it would have to pay to
have Verizon's facilities relocated pursuant to Verizon's tariff.
On October 15, 2007, Main Street Development informed Verizon
that it would not pay to relocate Verizon's facilities because
(1) Main Street Development was not a "customer" or "applicant"
as defined under Verizon's tariff, (2) Washington County rather
than Main Street Development requested Verizon to move its
facilities, and (3) Verizon's tariff "cannot and does not trump a
state statute [Oregon Revised Statute § 758.010] giving the
county direct and unqualified authority to order Verizon . . . to
move their facilities."

Verizon brought the matter of payment before the Washington
County Board of Commissioners.  On February 5, 2008, the

Commissioners held a board meeting, discussed the matter, noted Oregon Revised Statute § 758.010(2) provides only that a utility must move its facilities when ordered to do so by a county and does not address the question of who must pay for the move, ordered Verizon to relocate its facilities, and declined to decide the question of liability for payment.

On February 7, 2008, Washington County Counsel informed Verizon and Main Street Development that

> the Oregon PUC and Attorney General concurred with the County's authority to order the facility relocation under ORS 758.010, but took no position as to whether the utility or the developer would be obligated to pay relocation costs under the facts of this case. Board members understood that the relocation was necessary in order for a public road improvement to be completed. The County's action did not decide which entity ultimately would pay the cost. As between the County and Verizon, the statute does not condition the utility's compliance with a relocation order upon prior payment or any other prior act.

Parties' Stipulated Agreed Facts, Ex. 8.

Ultimately Verizon relocated its facilities onto the Alexander Street property within an area designated on the site plan as a public-utility easement. In September and December 2008 Verizon billed Main Street Development $108,811.28 for the relocation.

On November 3, 2008, Main Street Development informed Verizon that it had been billed "in error" because it was the County that ordered the relocation work, and, therefore, Verizon

6 - OPINION AND ORDER

did not have a basis for billing Main Street Development.

According to Defendants, Verizon's delay in moving its facilities "together with the general market collapse . . . halted" progress on the Main Street Development project. Although some improvements were made, the project has never been completed.

On January 16, 2009, Verizon filed a Complaint in this Court against Main Street Development and Vatheuer for collection of tariff, breach of contract, and *quantum meruit*.

On June 16, 2009, Verizon filed an Amended Complaint and added Main Street/Vatheuer Partnership as a Defendant.

On June 30, 2009, Vatheuer filed an Answer, Affirmative Defenses, and Counterclaim in which he brings a Counterclaim for trespass.

On August 21, 2009, Verizon filed a Motion for Partial Summary Judgment against all Defendants in which it seeks summary judgment as to its claims for collection of tariff and breach of contract and as to Vatheuer's Counterclaim for trespass. On September 23, 2009, Main Street/Vatheuer Partnership and Vatheuer filed a Cross-Motion for Summary Judgment as to all of Verizon's claims. On September 28, 2009, Main Street Development filed a Cross-Motion for Summary Judgment as to all of Verizon's claims.

On November 23, 2009, the Court heard oral argument on the parties' Motions. For the reasons stated on the record, the

Court granted Defendants' Motions for Summary Judgment as to
Verizon's breach-of-contract claim and denied Verizon's Motion
for Summary Judgment as to that claim.  The Court directed the
parties to file supplemental briefing by November 30, 2009, on
the issue of the method for interpreting tariffs.  The Court took
the remaining issues under advisement as of November 30, 2009.

## STANDARDS

Federal Rule of Civil Procedure 56(c) authorizes summary
judgment if no genuine issue exists regarding any material fact
and the moving party is entitled to judgment as a matter of law.
The moving party must show the absence of an issue of material
fact.  *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th
Cir. 2005).  In response to a properly supported motion for
summary judgment, the nonmoving party must go beyond the
pleadings and show there is a genuine issue of material fact for
trial.  *Id*.

An issue of fact is genuine "'if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party.'"
*Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th
Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
248 (1986)).  The court must draw all reasonable inferences in
favor of the nonmoving party.  *Id*.  "Summary judgment cannot be
granted where contrary inferences may be drawn from the evidence

8 - OPINION AND ORDER

as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005) (citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.

## DISCUSSION

As noted, Verizon seeks summary judgment as to its claims for collection of tariff and as to Vatheuer's Counterclaim for trespass. Defendants seek summary judgment as to all of Verizon's remaining claims.

9 - OPINION AND ORDER

## I.    Collection of Tariff.

Verizon asserts Defendants are liable for the cost of moving Verizon's facilities pursuant to Verizon's tariff with the PUC. Verizon's tariff contains a provision relating to relocation of facilities when they are located on a public right-of-way as follows:

### CONSTRUCTION OF OUTSIDE PLANT FACILITIES

CONDITIONS

    Public Right-of-Way

        Normal Construction

        The Company [Verizon] will extend cable/wire to the property line of the applicant/customer at no charge except where Line Extension Charges apply. Line Extension Charges may apply to some applicant/customers located outside the base rate area.

        Special Construction

        If the applicant/customer requests a route or type of construction other than what the Company would ordinarily provide, the additional cost of construction will be borne by the applicant/customer or others requesting the special construction.

        Relocation of Existing Outside Plant Facilities

        When cable/wire is relocated or the type of construction is changed at the applicant/customer's request, the entire cost of removing the old and constructing the new will be borne by the applicant/customer or others requesting the relocation.

Parties' Stipulated Agreed Facts, Ex. 19.  Verizon asserts these tariff provisions require Defendants to pay for the relocation

of the facilities at issue either because they are

"applicants/customers" or because they are "others requesting

. . . relocation."

Defendants assert (1) Oregon Revised Statute § 758.010(2)

governs this dispute and requires Verizon to pay for the

relocation, (2) Defendants are neither applicants nor customers

of Verizon, and (3) Defendants are not "others requesting

relocation."

**A.   Oregon Revised Statute § 758.010(2) does not govern this dispute.**

Defendants assert § 758.010(2) implies a utility must

pay to move its facilities when ordered to do so by a county

governing body.

Oregon Revised Statute § 758.010(2) provides in

pertinent part:

> A county governing body . . . ha[s] authority to
> designate the location upon roads under their
> respective jurisdiction, outside of cities, where
> lines, fixtures and facilities described in this
> section may be located, and may order the location
> of any such line, fixture or facility to be
> changed when such governing body or department
> deems it expedient.  Any line, fixture or facility
> erected or remaining in a different location upon
> such road than that designated in any order of the
> governing body or department is a public nuisance
> and may be abated accordingly.

Oregon Revised Statute § 758.010(2) allows a county

governing body to order the relocation of utilities facilities

and fixtures.  On its face, however, § 758.010(2) does not

11 - OPINION AND ORDER

contain any provision as to who should pay for the relocation of facilities.

When interpreting a statute, Oregon law provides courts may not "insert what has been omitted, or to omit what has been inserted" into a statute.  Or. Rev. Stat. § 174.010.  *See also Hoffart v. Wiggins*, 226 Or. App. 545, 549 (2009)("[C]ourts are not to insert into statutes language that has been omitted but shall simply ascertain and declare what is, in terms or in substance, contained therein.").  The Court notes the Oregon Legislature included provisions for payment in other situations involving movement of utilities facilities, and, therefore, the Legislature knows how to include such a provision in a statute.  *See, e.g.*, Or. Rev. Stat. §§ 757.272, 758.220, and 759.665.  The Legislature, however, did not include such a provision in § 758.010(2).  The Court, therefore, declines to interpret § 758.010 as implying that a utility must pay to move its facilities when ordered to do so by a county governing body.

Accordingly, the Court concludes § 758.010(2) does not resolve who must pay the cost of relocating Verizon's facilities.

**B.   Defendants are not applicants or customers under Verizon's tariff.**

Defendants contend they are not applicants or customers within the meaning of Verizon's tariff, and, therefore, they are not required to pay for relocation of Verizon's facilities under Verizon's tariff.

12 - OPINION AND ORDER

As noted, Verizon's tariff provides in pertinent part:

> When cable/wire is relocated or the type of
> construction is changed at the applicant/
> customer's request, the entire cost of removing
> the old and constructing the new will be borne by
> the applicant/customer or others requesting the
> relocation.

Tariffs are public documents setting forth the terms
and conditions of the common carrier's services and rates.
Tariffs filed with the appropriate utility commission are not
merely contracts, but also have the force of law. *Lowden v.
Simonds-Shields-Lonsdale Grain Co.*, 306 U.S. 516, 520 (1939).
*See also Phillips v. Portland Gen. Elec. Co.*, Order No. 99-327,
1999 Or. PUC LEXIS 262, at *7 (1999); *Carter v. Am. Tel. & Tel.
Co.*, 365 F.2d 486, 496 (5th Cir. 1966)("[A] tariff, required by
law to be filed, is not a mere contract.  It is the law.").  In
the absence of authority specifying whether Oregon courts
interpret utilities tariffs merely as contracts or also as having
the force of law like statutes, the Court will apply Oregon's
rules of statutory construction to determine whether Defendants
are customers or applicants within the meaning of Verizon's
tariff.

### 1.    Application of Oregon's rules of statutory construction.

Traditionally, Oregon courts have followed a
methodology for interpreting statutes "outlined in *PGE v. Bureau
of Labor and Industries*, 317 Or. 606, 610-12, 859 P.2d 1143

13 - OPINION AND ORDER

(1993)."  This methodology

> entails three sequential levels of analysis to
> determine the legislature's intent.  First, the
> court examines the text and context of the
> statute.  *Id*. at 610-11, 859 P.2d 1143.  If the
> legislature's intent is obvious from that first
> level of analysis, "further inquiry is unneces-
> sary."  *Id*. at 611, 859 P.2d 1143.  "If, but only
> if," the legislature's intent is not obvious from
> the text and context inquiry, "the court will then
> move to the second level, which is to consider
> legislative history[.]"  *Id*. at 611, 859 P.2d
> 1143.  If the legislature's intent remains unclear
> after examining legislative history, "the court
> may resort to general maxims of statutory
> construction to aid in resolving the remaining
> uncertainty."  *Id*. at 612, 859 P.2d 1143.

*State v. Gaines*, 346 Or. 160, 164-65 (2009).  In 2009, however,

the Oregon Supreme Court concluded:

> [I]n light of the 2001 amendments to ORS 174.020,
> the appropriate methodology for interpreting a
> statute is as follows.  The first step remains an
> examination of text and context.  *PGE*, 317 Or. at
> 610-11, 859 P.2d 1143.  But, contrary to this
> court's pronouncement in *PGE*, we no longer will
> require an ambiguity in the text of a statute as
> a necessary predicate to the second step --
> consideration of pertinent legislative history
> that a party may proffer.  Instead, a party is
> free to proffer legislative history to the court,
> and the court will consult it after examining text
> and context, even if the court does not perceive
> an ambiguity in the statute's text, where that
> legislative history appears useful to the court's
> analysis.  However, the extent of the court's
> consideration of that history, and the evaluative
> weight that the court gives it, is for the court
> to determine.  The third, and final step, of the
> interpretative methodology is unchanged.  If the
> legislature's intent remains unclear after
> examining text, context, and legislative history,
> the court may resort to general maxims of
> statutory construction to aid in resolving the
> remaining uncertainty.

*Id*. 171-72.

### 2.    Interpretation of Verizon's tariff.

Verizon's tariff defines an applicant as "[a]n individual or concern who (1) applies to the Company for telephone service with a utility or (2) reapplies for service at a new or existing location after service has been discontinued." Reed Decl., Ex. 31. Verizon's tariff defines a customer as "[a] person, firm, partnership, corporation, municipality, cooperative organization, governmental agency etc., who has applied for, been accepted, and is currently receiving service." Reed Decl., Ex. 32. The tariff, however, does not define the term "service."

Defendants point out that they did not apply to Verizon for telephone or telecommunications service, they were not accepted for telephone or telecommunications service, and they did not receive telephone or telecommunications service at any point for the Alexander Street property. Thus, according to Defendants, they are neither applicants nor customers as those terms are defined in Verizon's tariff.

Verizon notes "service" as it applies to utilities under Oregon Revised Statutes is intended to be "used in its broadest and most inclusive sense and includes equipment and facilities related to providing the service or the products served." *See* Or. Rev. Stat. § 756.010(8). The definition of service in § 756.010(8), however, is specifically limited to its

15 - OPINION AND ORDER

use in chapters 756, 757, 758, and 759 of the Oregon Revised Statutes.  Verizon does not point to any provision of its tariff that provides or suggests Verizon and the PUC intended to incorporate in Verizon's tariff the definition of "service" as it appears in § 756.010(8).  The Court, therefore, considers the use of the term "service" within the wider context of Verizon's tariff.

In its tariff, Verizon uses the term "service" regularly to refer to telecommunications or telephone services rather than to the relocation of facilities.  For example, in Section III of the General Regulations in Verizon's tariff, "Abuse or Fraudulent Use of Service" is defined to include

> the use of service or facilities of the Company to transmit a message, or to locate a person, or otherwise to give or obtain information, without payment of the charge applicable for service;

> the obtaining, or attempting to obtain, or assisting another to obtain, or to attempt to obtain service, by rearranging, tampering with, or making connection with any facilities of the Company, or by any trick, scheme, false representation, or false credit device, or by or through any other fraudulent means or device whatsoever, with intent to avoid the payment, in whole or in part, of the regular charge for such service;

> the use of service or facilities of the Company for a call or calls, anonymous or otherwise, if in a manner reasonably expected to frighten, abuse, torment, or harass another;

> the use of profane language;

> the use of the service in such manner as to

16 – OPINION AND ORDER

> interfere unreasonably with the use of the service by other customers;
>
> the use of a switching system to automatically connect an incoming call to an outgoing private line or foreign exchange line to permit the incoming caller to extend a call to a distant location over these facilities is considered to be switching of calls, a service normally performed by the Company.

P.U.C. OR. 18, Section III, Orig. Sheet 8. Similarly, the General Regulations of Verizon's tariff also specify "grounds for disconnection of service" and provide Verizon "may terminate the service and remove its equipment" under certain conditions. P.U.C. OR. 18, Section III, Orig. Sheet 11. In addition, Verizon's tariff contains several references to disconnecting service, which uniformly refer to disconnecting access to telephone lines and services rather than moving facilities.

Based on the use of the term "service" throughout Verizon's tariff and absent any clarifying definition of the term within the tariff, the Court finds "service" under the Verizon tariff does not include relocating facilities. Accordingly, the Court concludes Verizon has not established that Defendants were applicants or customers of Verizon or that the portion of Verizon's tariff requiring customers or applicants to pay "[w]hen cable/wire is relocated or the type of construction is changed at the applicant/customer's request" applies to Defendants under the circumstances of this case.

17 - OPINION AND ORDER

**C.    Defendants are not "others requesting the relocation."**

Verizon contends even if Defendants are not customers or applicants as defined in its tariff, they are still "others requesting the relocation."  Defendants, however, assert "others requesting the relocation" is a dependent clause that describes who must pay when a cable or wire is relocated at the request of an applicant or customer.  In essence, Defendants request the Court to read the provision as follows:  "If a cable/wire is relocated . . . at the applicant/customer's request, then the entire cost of removing the old and constructing the new will be borne by the applicant/customer or others requesting the relocation."  According to Defendants, therefore, only when an applicant or customer has requested relocation must payment for the relocation be made by the applicant, customer, or "others" requesting the relocation.  The Court notes, however, under Defendants' interpretation the provision would not ultimately apply if a third party requested the relocation, and, as a result, the third party requesting relocation would never be liable for payment under that provision.  Thus, Defendants' suggested interpretation would result in ignoring the phrase "others requesting relocation."

Verizon, on the other hand, argues the Court should read the provision at issue as "the entire cost of removing the old and constructing the new will be borne by the

18 - OPINION AND ORDER

applicant/customer or others requesting the relocation."
Verizon's interpretation, however, essentially ignores the
following language in the first part of the paragraph:  "When
cable/wire is relocated or the type of construction is changed at
the applicant/customer's request . . . ."

Under Oregon's rules of statutory construction, the
phrase "others requesting the relocation" must be given effect if
possible.  *See* Or. Rev. Stat. § 42.230 ("In the construction of
an instrument, the office of the judge is simply to ascertain and
declare what is, in terms of substance, contained therein . . .;
and where there are several provisions or particulars, such
construction, if possible, to be adopted as will give effect to
all.").  The language at issue here is internally inconsistent,
and it is clearly susceptible to more than one interpretation.
In addition, the record does not reflect any history that
illuminates Verizon's intent in drafting the language at issue
nor the PUC's intent in approving it.  Moreover, the record
does not provide any basis for concluding either one of the
interpretations should prevail.  The Court, therefore, turns to
the principles of contract construction to resolve the issue.

As noted, although it is unclear whether Verizon's
tariff should be considered merely a contract, Oregon courts have
applied rules of contract interpretation to tariffs in the past.
*See, e.g., Green Mountain Log Co. v. Columbia & Nehalem River*

19 – OPINION AND ORDER

*R.R.*, 146 Or. 461, 471 (1934).  Under Oregon contract law, if a contract provision is ambiguous on its face, the court proceeds to examine the disputed provision "in the broader context of the [contract] as a whole.  If - and only if - the ambiguity persists, [the court] construe[s] the [contract] against the drafter."  *Rick Franklin Corp. v. State ex rel. Dep't of Transp.*, 207 Or. App. 183, 195 n.8 (2006)(citations omitted).  Here because the provision at issue is ambiguous and both interpretations suggested by the parties are problematic, the Court applies the rule of contract interpretation set out in *Rick Franklin* and interprets this provision against Verizon as the drafter of the tariff.

        Accordingly, the Court concludes Verizon's tariff does not require payment for relocation of Verizon's facilities by Defendants because they are not customers or applicants or "others requesting the relocation" as defined by the tariff.  The Court, therefore, denies Verizon's Motion for Summary Judgment as to its tariff claim and grants Defendants' Motions for Summary Judgment as to Verizon's claim for collection of its tariff.

**II.  *Quantum Meruit*.**

        Defendants also seek summary judgment against Verizon's *quantum-meruit* claim on the grounds that Verizon has not established it conferred a benefit on Defendants or, in the alternative, it would be unjust for Defendants to pay for the

20 - OPINION AND ORDER

relocation of Verizon's facilities.

> A claim for *quantum meruit* is a quasi-contractual
> claim. *Robinowitz v. Pozzi*, 127 Or. App. 464,
> 467, 872 P.2d 993, *rev. den.*, 320 Or. 109, 881
> P.2d 141 (1994).  The elements of the claim are a
> benefit conferred, awareness by the recipient that
> a benefit has been received, and judicial
> recognition that, under the circumstances, it
> would be unjust to allow retention of the benefit
> without requiring the recipient to pay for it.
> *Jaqua v. Nike, Inc.*, 125 Or. App. 294, 298, 865
> P.2d 442 (1993).

*Safeport, Inc. v. Equip. Roundup & Mfg., Inc.*, 184 Or. App. 690,

706 (2002).

**A.    Benefit conferred**.

Defendants acknowledge the Alexander Street property

and its future homeowners derive a benefit from the relocation of

Verizon's facilities and subsequent street improvements.

Defendants, however, assert Washington County is the primary

beneficiary.  Defendants point to the remarks of Washington

County Engineer Greg Miller before the Washington County Board of

Commissioners to support their assertion that the relocation of

Verizon's facilities benefitted Washington County rather than

Defendants.  The minutes of the Washington County Board of

Commissioners' meeting report Miller's remarks as follows:

> [T]his road improvement is to benefit the public.
> He observed that there is no benefit to the
> developer; in fact, it will cost him a good deal
> of money.  Mr. Miller explained that it does not
> provide access to [the] development.  He added
> that had the developer not been conditioned to do
> this road improvement, he would not be doing it.

21 - OPINION AND ORDER

Parties' Stipulated Agreed Facts, Ex. 7 at 2.  Thus, according to
Defendants, the relocation did not benefit Defendants as required
under *Safeport*.

Although Verizon agrees the public may have benefitted
from the widening of the road and, by extension, from the
relocation of Verizon's facilities, Verizon asserts Defendants as
the property developers were the primary beneficiaries because
they could not have gone forward with the development without
widening the road.  Verizon cites a number of cases to support
its assertion that Defendants were the primary beneficiaries,
and, therefore, that Verizon is entitled to *quantum meruit*.  As
the Court noted at oral argument, however, the majority of cases
cited by Verizon are from states other than Oregon in which the
courts relied on either the common laws or statutes and
regulations of those states.  Thus, those cases do not inform the
Court as to the law in Oregon.  Verizon, however, also cites two
Oregon cases to support its assertion:  *Northwest Natural Gas Co.
v. City of Portland*, 300 Or. 291, 293 (1985), and *Multnomah
County v. Rockwood Water District*, 219 Or. 356 (1959).

In *Northwest Natural*, the City of Portland compelled
various utilities to relocate their facilities that were within
public rights-of-way to accommodate construction of the light
rail.  300 Or. at 293.  The Oregon Supreme Court limited its
review to whether "the utilities are entitled to compensation for

22 - OPINION AND ORDER

relocation of their facilities that lie within the public
rights-of-way in the City of Portland" and ultimately held the
utilities were not. *Id*. at 293-94.  The court rejected the
governmental/proprietary distinction used to decide "mass
transit/utility relocation cases." *Id*. at 302.  The court found
the resolution of who must pay depends on two things:
"(1) the sources governing the authority of the City of Portland
to require the utilities to relocate in aid of Tri-Met, and
(2) the specific franchises of the utilities." *Id*. at 303.  The
court reviewed Oregon statutes and Portland's City Code and
determined that in combination they authorized the City to order
uncompensated relocation when it is for the public benefit. *Id*.
at 307.  The court then reviewed the utilities' specific
franchise agreements and concluded the City was authorized to
order relocation of utilities facilities for the light-rail
project and to require the utilities to pay the costs of such a
relocation. *Id*. at 311.

As this Court noted at oral argument, however, the
Oregon Supreme Court's holding in *Northwest Natural* is of limited
relevance to the issues here because the facts are distinguish-
able from this case.  For example, *Northwest Natural* involved a
dispute between a governmental entity and utilities rather than a
dispute between a utility and a private developer.  In addition,
*Northwest Natural* turned on the interpretation of Portland's City

Code and Oregon statutes related to utilities' obligations within the City of Portland.  Thus, the Court concludes the principles set out in *Northwest Natural* do not resolve the issues in this case.  The Court also notes the Oregon Supreme Court in *Northwest Natural* rejected the proprietary/governmental test applied in *Rockwood*, and, therefore, this Court concludes *Rockwood Water District* also is not helpful in determining whether and to whom a benefit was conferred in this matter and whether Defendants are required to pay Verizon for the relocation of its facilities.

In addition to their other arguments, Defendants contend Washington County had a general street-development plan that called for the widening of the street at some point.  According to Defendants, therefore, Verizon would have had to move their facilities in any event, and, therefore, the fact that Verizon moved them to accommodate Defendants' project does not establish Defendants were the primary beneficiaries.  The record, however, does not reflect Washington County had any immediate or concrete plans to widen the road.

In summary, the Court concludes on this record there is sufficient evidence that a benefit was conferred on Defendants because Defendants could not move forward with their development, which required widening the road, until after Verizon relocated its facilities.

24 - OPINION AND ORDER

**B.    Awareness that a benefit has been received.**

Defendants do not contend they were unaware that Verizon moved its facilities or that they received some benefit.

**C.    Retention of benefit.**

As noted, the Court must determine whether it would be unjust to allow Defendants to retain the benefit without requiring Defendants to pay for it.  *Safeport,* 184 Or. App. at 706.

> For an injustice to be found, one of three things must be true:
>
> (1) the plaintiff had a reasonable expectation of payment;
>
> (2) the defendant should reasonably have expected to pay; or
>
> (3) society's reasonable expectations of security of person and property would be defeated by nonpayment.

*Jaqua,* 125 Or. App. at 298 (quotations omitted).

Here Verizon relied on its interpretation of its tariff and past practices and believed Defendants would have to pay for the relocation.  Defendants, in turn, relied on their interpretation of Verizon's tariff as well as their past practices and believed they would not have to pay for the relocation of Verizon's facilities.  Whether on this record any of the parties' beliefs were reasonable is an issue of fact to be resolved by the trier of fact.  The Court, therefore, concludes Defendants, as the moving parties, have not established Verizon's

25 - OPINION AND ORDER

expectation that Defendants would have to pay for the relocation of its facilities was unreasonable.  In addition, the Court also concludes the record does not establish Defendants' belief that they would not have to pay for the relocation was unreasonable. Thus, the Court turns to the third method under *Jaqua* to determine whether it would be unjust to allow Defendants to retain a benefit without requiring them to pay for it.

Defendants assert society's "reasonable expectations of security of person or property" would not be defeated if Verizon paid for the relocation because Verizon has the "right and privilege to construct, maintain and operate its . . . communication service lines, fixtures and other facilities along the public roads in [Oregon] . . . free of charge" under Oregon Revised Statute § 758.010(1).  According to Defendants, Verizon's "payment is merely satisfaction of [its] end of the bargain [with the State]."  Defendants argue society's reasonable expectations of security of person or property would be thwarted and Verizon would receive a windfall if Verizon received "both the benefit of placing its facilities in the right-of-way free of charge and the benefit of escaping liability for relocation costs when the adjacent land improves."

Verizon, however, asserts society's reasonable expectations of security of person or property would be defeated if Verizon had to pay the costs of relocating its facilities

26 - OPINION AND ORDER

because those costs would ultimately be borne by all of its
ratepayers who did not receive any direct benefit from
Defendants' development.  In addition, Verizon asserts the fact
that § 758.010(1) allows Verizon to place its facilities on
public roads in Washington County reflects a public-policy
decision made by the Oregon Legislature to further its stated
goal "to secure and maintain high-quality universal tele-
communications service at just and reasonable rates for all
classes of customers." *See* Or. Rev. Stat. § 759.015.  Moreover,
Verizon had to incur the cost of installing its facilities in the
first place.  Thus, according to Verizon, allowing it to place
its facilities on public roads and requiring private developers
to pay for relocation of those facilities when necessary for
private development is not a windfall for Verizon.

In addition, the Court finds Oregon Revised Statute
§ 758.010(1) was not intended to protect or to regulate private
developers in general or entities and persons like Defendants.
Instead § 758.010(1) merely shows it would *not* be unjust to allow
the County or the State to retain the benefit of the relocation
of Verizon's facilities without requiring them to pay for it.

Verizon also points out that Defendant Vatheuer entered
into a Public Improvement Contract with Washington County in
which he agreed to "provide public improvements [as noted] in
conformance with [the Community Development Code] and agree[d] to

27 - OPINION AND ORDER

maintain an assurance in the amount of $70.020.00."  Vatheuer
also agreed "if work on the subject improvements of this contract
[was] abandoned, incomplete or deficient . . . after March 30,
2008, County may collect the assurance described."  According to
Verizon, therefore, society's reasonable expectations of security
or property include an expectation that Defendants would pay for
the necessary improvements, which entailed widening the road and,
by extension, relocating Verizon's facilities.

Finally, Verizon contends "society's reasonable
expectations of security of person or property" would not be
compromised if Defendants paid for the relocation of Verizon's
facilities because there is not any evidence that Washington
County would have required Verizon to relocate its facilities
"but for" Defendants' proposed development.

On this record, the Court concludes there are genuine
issues of material fact that preclude summary judgment as to
whether the expectations of the parties were reasonable and
whether it would be unjust to allow Defendants to retain the
benefit of Verizon's relocated facilities without requiring
Defendants to pay for it.  Accordingly, the Court denies
Defendants' Motions for Summary Judgment as to Verizon's claim
for *quantum meruit*.

**III. Vatheuer's Counterclaim for Trespass.**

Verizon moves for summary judgment as to Vatheuer's trespass

28 - OPINION AND ORDER

Counterclaim on the ground that Verizon had consent to relocate its facilities within the area of Vatheuer's property.

In his Counterclaim, Vatheuer alleges:

> In or around September 2008, plaintiff, without permission from Vatheuer, placed a utility line and a large utility box ("the Facilities") within the clearly marked boundary of the Alexander Street Property. The land onto which Verizon placed the Facilities was not subject to any legally recorded easement or public right-of-way, but was private property under the exclusive ownership and possession of Vatheuer.

> When installing the Facilities, plaintiff entered onto Vatheuer's private property without permission, constituting an invasion of Vatheuer's protected interest in the exclusive possession of his property.

> Plaintiff's Facilities are permanent in nature and constitute a continuing trespass upon Vatheuer's private property.

> Vatheuer was damaged by plaintiff's trespass and continues to be damaged by plaintiff's failure to compensate him for the use of his land to the approximate sum of $10,000.00.

Vatheuer's Answer, Affirmative Defenses and Counterclaim ¶¶ 22-25. Vatheuer asserts Verizon did not have consent to enter the Alexander Street property and, even if Verizon had consent, it exceeded the scope of that consent. Specifically, Vatheuer asserts "without notice of when Verizon intended its construction, Defendants would be unable to ensure the property was properly prepared for the construction and safe for Verizon to enter the property."

To establish the tort of trespass under Oregon law, Vatheuer

29 - OPINION AND ORDER

must establish an "intentional, physical intrusion by [Verizon] on [Vatheuer's] property . . . which causes damage to [Vatheuer] and which has not been authorized or consented to by [Vatheuer]." *See Huffman and Wright Logging Co. v. Wade*, 317 Or. 445, 469 n.8 (1993). Consent is a defense to an action for trespass. *Hager v. Tire Recyclers, Inc.*, 136 Or. App. 439, 443 (1995). If a trespasser had the landowner's consent to enter upon the land for a particular purpose, the landowner cannot maintain an action for trespass. *Hawkins v. Barber*, 263 Or. 416, 418 (1972). Establishing consent requires evidence of "actual willingness" on the part of the property owner to allow the trespasser to "engage in the particular type of entry." *Colmus v. Sergeeva*, 175 Or. App. 131, 135 (2001). Consent may also be inferred from a landowner's silence or inaction if the landowner has actual knowledge of the trespasser's intention to enter. *Id. See also Hager*, 136 Or. App. at 443.

Here it is undisputed that Main Street Development's counsel told Verizon in his October 15, 2007, letter, that Verizon needed to relocate its facilities and to coordinate with Miller as to the new location. According to Verizon, under County Community Development Code Article VI 605-3.3 and 605-3.4, the only place to relocate their facilities was within the "P.U.E., exactly where the lines were put." When Verizon submitted its relocation plans to Washington County for the required permit, Vatheuer did

not object to those plans other than to comment that the

relocation was taking too long.

Verizon also points out that Oregon Revised Statute

§ 759.075 grants a limited license for telecommunications

companies to enter lands within Oregon for the purpose of

constructing service facilities as follows:

> (1) Any telecommunications utility may:
>
> > (a)  Enter upon lands within this state for
> > the purpose of examining, locating and
> > surveying the line thereof and also other
> > lands necessary and convenient for the
> > purpose of construction of service
> > facilities, doing no unnecessary damage
> > thereby.

With respect to utilities companies entering property "to do

acts" without possessing an interest in the land, Verizon notes

the Oregon Supreme Court has long held:

> A license is defined as a personal, revocable, and
> unassignable privilege conferred either by writing
> or parol to do one or more acts on land without
> possessing any interest therein.  It is a
> distinguishing characteristic of a license that it
> gives no interest in the land and it may rest in
> parol. . . .  *It is an authority to do a lawful
> act, which, without it, would be unlawful; and,
> while it remains unrevoked, is a justification
> for the acts which it authorizes to be done.*
> According to this principle, a bare parol license,
> though without consideration, will furnish a
> justification for an act which would otherwise be
> a trespass.

*Schiffmann v. Hickey*, 101 Or. 569, 601 (1921)(emphasis added).

According to Verizon, therefore, its presence on Vatheuer's

property for the purpose of relocating its facilities was

31 - OPINION AND ORDER

authorized by § 759.075.

Verizon also notes there is not any evidence in the record that (1) Defendants asked for advance notice before Verizon completed the relocation; (2) Defendants set any conditions on Verizon's performance of the work (other than the payment issue); or (3) Defendants objected to Verizon's work before, during, or after it was completed until Vatheuer filed his Counterclaim to Verizon's First Amended Complaint on June 30, 2009.

On this record, the Court concludes there is not any issue of material fact as to whether Verizon's presence on Vatheuer's property for the purpose of relocating its facilities was authorized by statute and Vatheuer has failed to establish there is any factual basis on which a rational trier of fact could find the absence of consent.  Accordingly, the Court grants Verizon's Motion for Summary Judgment as to Vatheuer's Counterclaim for trespass on the basis that Vatheuer cannot show Verizon's entry on to the property was unauthorized.


## CONCLUSION

For these reasons, the Court **GRANTS in part** and **DENIES in part** Verizon's Motion (#27) for Partial Summary Judgment as follows:

1.    **GRANTS** Verizon's Motion as to Defendant Vatheuer's Counterclaim for trespass and

32 - OPINION AND ORDER

     2.    **DENIES** Verizon's Motion as to its claim for enforcement of tariff.

The Court **GRANTS in part** and **DENIES in part** the Cross-Motion (#36) for Summary Judgment of Defendants Main Street/Vatheuer Partnership and Hans J. Vatheuer as follows:

     1.    **GRANTS** Defendants' Cross-Motion as to Verizon's claim for enforcement of tariff and

     2.    **DENIES** Defendants' Cross-Motion as to Verizon's claim for *quantum meruit*.

The Court **GRANTS in part** and **DENIES in part** Defendant Main Street Development's Cross-Motion (#54) for Summary Judgment as follows:

     1.    **GRANTS** Defendant's Cross-Motion as to Verizon's claim for enforcement of tariff and

     2.    **DENIES** Defendant's Cross-Motion as to Verizon's claim for *quantum meruit*.

The Court **DIRECTS** the parties to confer concerning further proceedings needed to resolve Verizon's *quantum meruit* claim and to submit a joint status report to the Court no later than **March 12, 2010**, providing a joint proposed schedule on which to

proceed.

IT IS SO ORDERED.

DATED this 25th day of February, 2010.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

VERIZON NORTHWEST, INC.,                          09-CV-72-BR

      Plaintiff,

                                   OPINION AND ORDER

v.

MAIN STREET DEVELOPMENT,
INC., an Oregon corporation;
HANS J. VATHEUER; and the
MAIN STREET/VATHEUER
PARTNERSHIP, an Oregon
partnership,

      Defendants.

JAY T WALDRON
CARSON BOWLER
WILLIAM J. OHLE
Schwabe Williamson & Wyatt, PC
1600-1900 Pacwest Center
1211 S.W. Fifth Avenue
Portland, OR 97204
(503) 796-2945

      Attorneys for Plaintiff

1 - OPINION AND ORDER

**THOMAS H. CUTLER**
Harris Berne Christensen, LLP
5000 S.W. Meadows Road
Suite 400
Lake Oswego, OR 97035
(503) 968-1475

         Attorneys for Defendant Main Street Development, Inc.

**MICHAEL T. WISE**
**MARCUS H. REED**
Michael Wise and Associates, P.C.
806 S.W. Broadway
800 Jackson Tower
Portland, OR 97205
(503) 224-8422

         Attorneys for Defendants Hans J. Vatheuer and Main
         Street/Vatheuer Partnership


**BROWN, Judge.**

     This matter comes before the Court on Plaintiff Verizon

Northwest, Inc.'s Motion (#27) for Partial Summary Judgment; the

Cross-Motion (#36) for Summary Judgment of Defendants Main

Street/Vatheuer Partnership and Hans J. Vatheuer; and Defendant

Main Street Development, Inc.'s Cross-Motion (#54) for Summary

Judgment.

     For the reasons that follow, the Court **GRANTS in part** and

**DENIES in part** Plaintiff Verizon's Motion for Partial Summary

Judgment, **GRANTS in part** and **DENIES in part** the Cross-Motion for

Summary Judgment of Defendants Main Street/Vatheuer Partnership

and Hans J. Vatheuer, and **GRANTS in part** and **DENIES in part**

2 - OPINION AND ORDER

Defendant Main Street Development's Cross-Motion for Summary
Judgment.

## BACKGROUND

The following facts are taken from the parties' Stipulated
Agreed Facts and Exhibits unless otherwise noted:

Verizon is an "Incumbent Local Exchange Carrier" under the
Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56
(codified as amended in various sections of U.S.C. Titles 15, 18,
and 47).  Verizon provides telecommunications services throughout
Oregon.  It is a regulated "rate-of-return" public utility, and,
therefore, its tariffs are reviewed and approved by the Oregon
Public Utility Commission (PUC).

Main Street Development is in the business of developing
real-estate projects, including residential housing.

In 2005 Vatheuer entered into an oral development agreement
with Main Street Development.  The agreement provided:

1.   Vatheuer would purchase property at 19755 Alexander
     Street, Beaverton, Oregon;

2.   Main Street Development would develop townhomes on the
     Alexander Street Property;

3.   Main Street Development would seek and obtain all
     necessary government approvals for the development of
     townhomes on the Alexander Street Property;

4.   Main Street Development would proceed with horizontal

3 - OPINION AND ORDER

preparation of lots, infrastructure construction, and
vertical construction of the townhomes; and

5.   Vatheuer would loan funds to Main Street Development
for development and construction costs of the project.

On April 27, 2006, Main Street Development obtained a
Washington County Land Use Decision that "approved with
conditions" the development of townhomes on the Alexander Street
Property.  One of the conditions of approval was that Main Street
Development would widen Alexander Street to meet Washington
County's Uniform Road Improvement Design standards.

On August 22, 2007, in connection with the Land Use
Decision, Vatheuer entered into a "Public Improvement Contract"
with Washington County in which Vatheuer agreed to "provide
public improvements [as noted] in conformance with [the Community
Development Code] and agree[d] to maintain an assurance in the
amount of $70,020.00."  Decl. of William Ohle, Ex. 21 at 1.
Vatheuer also agreed "if work on the subject improvements of this
contract is abandoned, incomplete or deficient . . . after
March 30, 2008, County may collect the assurance described."
Ohle Decl., Ex. 21 at 2.

To satisfy the condition requiring Alexander Street to be
widened, Main Street Development retained W.B. Wells Engineering
to prepare site plans for the development.  It was determined
that an underground telecommunications facility and cross-box

4 - OPINION AND ORDER

belonging to Verizon located within the right-of-way along the
Alexander Street property needed to be relocated in order to
widen Alexander Street as required by Washington County.

On September 5, 2007, Washington County Engineer Gregory
Miller sent Verizon a letter noting the conditions Washington
County imposed on the development of the Alexander Street
property and advised Verizon:  "Per ORS 758.010 . . . Washington
County directs your utility to relocate your [facilities] at your
expense so that [they do] not interfere with the construction of
the County road.  Please do so in the next 60 days so the
developer can complete his road work prior to winter."  Verizon
then advised Main Street Development that it would have to pay to
have Verizon's facilities relocated pursuant to Verizon's tariff.
On October 15, 2007, Main Street Development informed Verizon
that it would not pay to relocate Verizon's facilities because
(1) Main Street Development was not a "customer" or "applicant"
as defined under Verizon's tariff, (2) Washington County rather
than Main Street Development requested Verizon to move its
facilities, and (3) Verizon's tariff "cannot and does not trump a
state statute [Oregon Revised Statute § 758.010] giving the
county direct and unqualified authority to order Verizon . . . to
move their facilities."

Verizon brought the matter of payment before the Washington
County Board of Commissioners.  On February 5, 2008, the

5 - OPINION AND ORDER

Commissioners held a board meeting, discussed the matter, noted Oregon Revised Statute § 758.010(2) provides only that a utility must move its facilities when ordered to do so by a county and does not address the question of who must pay for the move, ordered Verizon to relocate its facilities, and declined to decide the question of liability for payment.

On February 7, 2008, Washington County Counsel informed Verizon and Main Street Development that

> the Oregon PUC and Attorney General concurred with the County's authority to order the facility relocation under ORS 758.010, but took no position as to whether the utility or the developer would be obligated to pay relocation costs under the facts of this case. Board members understood that the relocation was necessary in order for a public road improvement to be completed. The County's action did not decide which entity ultimately would pay the cost. As between the County and Verizon, the statute does not condition the utility's compliance with a relocation order upon prior payment or any other prior act.

Parties' Stipulated Agreed Facts, Ex. 8.

Ultimately Verizon relocated its facilities onto the Alexander Street property within an area designated on the site plan as a public-utility easement. In September and December 2008 Verizon billed Main Street Development $108,811.28 for the relocation.

On November 3, 2008, Main Street Development informed Verizon that it had been billed "in error" because it was the County that ordered the relocation work, and, therefore, Verizon

6 - OPINION AND ORDER

did not have a basis for billing Main Street Development.

According to Defendants, Verizon's delay in moving its facilities "together with the general market collapse . . . halted" progress on the Main Street Development project. Although some improvements were made, the project has never been completed.

On January 16, 2009, Verizon filed a Complaint in this Court against Main Street Development and Vatheuer for collection of tariff, breach of contract, and *quantum meruit*.

On June 16, 2009, Verizon filed an Amended Complaint and added Main Street/Vatheuer Partnership as a Defendant.

On June 30, 2009, Vatheuer filed an Answer, Affirmative Defenses, and Counterclaim in which he brings a Counterclaim for trespass.

On August 21, 2009, Verizon filed a Motion for Partial Summary Judgment against all Defendants in which it seeks summary judgment as to its claims for collection of tariff and breach of contract and as to Vatheuer's Counterclaim for trespass. On September 23, 2009, Main Street/Vatheuer Partnership and Vatheuer filed a Cross-Motion for Summary Judgment as to all of Verizon's claims. On September 28, 2009, Main Street Development filed a Cross-Motion for Summary Judgment as to all of Verizon's claims.

On November 23, 2009, the Court heard oral argument on the parties' Motions. For the reasons stated on the record, the

7 - OPINION AND ORDER

Court granted Defendants' Motions for Summary Judgment as to Verizon's breach-of-contract claim and denied Verizon's Motion for Summary Judgment as to that claim.  The Court directed the parties to file supplemental briefing by November 30, 2009, on the issue of the method for interpreting tariffs.  The Court took the remaining issues under advisement as of November 30, 2009.

## **STANDARDS**

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact.  *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial.  *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Id*.  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence

8 - OPINION AND ORDER

as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005) (citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.


## DISCUSSION

As noted, Verizon seeks summary judgment as to its claims for collection of tariff and as to Vatheuer's Counterclaim for trespass. Defendants seek summary judgment as to all of Verizon's remaining claims.

9 - OPINION AND ORDER

**I.    Collection of Tariff.**

Verizon asserts Defendants are liable for the cost of moving Verizon's facilities pursuant to Verizon's tariff with the PUC. Verizon's tariff contains a provision relating to relocation of facilities when they are located on a public right-of-way as follows:

### CONSTRUCTION OF OUTSIDE PLANT FACILITIES

CONDITIONS

    Public Right-of-Way

        Normal Construction

        The Company [Verizon] will extend cable/wire to the property line of the applicant/customer at no charge except where Line Extension Charges apply. Line Extension Charges may apply to some applicant/customers located outside the base rate area.

        Special Construction

        If the applicant/customer requests a route or type of construction other than what the Company would ordinarily provide, the additional cost of construction will be borne by the applicant/customer or others requesting the special construction.

        Relocation of Existing Outside Plant Facilities

        When cable/wire is relocated or the type of construction is changed at the applicant/customer's request, the entire cost of removing the old and constructing the new will be borne by the applicant/customer or others requesting the relocation.

Parties' Stipulated Agreed Facts, Ex. 19.  Verizon asserts these tariff provisions require Defendants to pay for the relocation

10 - OPINION AND ORDER

of the facilities at issue either because they are

"applicants/customers" or because they are "others requesting

. . . relocation."

Defendants assert (1) Oregon Revised Statute § 758.010(2)

governs this dispute and requires Verizon to pay for the

relocation, (2) Defendants are neither applicants nor customers

of Verizon, and (3) Defendants are not "others requesting

relocation."

**A.   Oregon Revised Statute § 758.010(2) does not govern this dispute.**

Defendants assert § 758.010(2) implies a utility must

pay to move its facilities when ordered to do so by a county

governing body.

Oregon Revised Statute § 758.010(2) provides in

pertinent part:

> A county governing body . . . ha[s] authority to
> designate the location upon roads under their
> respective jurisdiction, outside of cities, where
> lines, fixtures and facilities described in this
> section may be located, and may order the location
> of any such line, fixture or facility to be
> changed when such governing body or department
> deems it expedient.  Any line, fixture or facility
> erected or remaining in a different location upon
> such road than that designated in any order of the
> governing body or department is a public nuisance
> and may be abated accordingly.

Oregon Revised Statute § 758.010(2) allows a county

governing body to order the relocation of utilities facilities

and fixtures.  On its face, however, § 758.010(2) does not

11 - OPINION AND ORDER

contain any provision as to who should pay for the relocation of facilities.

When interpreting a statute, Oregon law provides courts may not "insert what has been omitted, or to omit what has been inserted" into a statute.  Or. Rev. Stat. § 174.010.  *See also Hoffart v. Wiggins*, 226 Or. App. 545, 549 (2009)("[C]ourts are not to insert into statutes language that has been omitted but shall simply ascertain and declare what is, in terms or in substance, contained therein.").  The Court notes the Oregon Legislature included provisions for payment in other situations involving movement of utilities facilities, and, therefore, the Legislature knows how to include such a provision in a statute. *See, e.g.*, Or. Rev. Stat. §§ 757.272, 758.220, and 759.665.  The Legislature, however, did not include such a provision in § 758.010(2).  The Court, therefore, declines to interpret § 758.010 as implying that a utility must pay to move its facilities when ordered to do so by a county governing body.

Accordingly, the Court concludes § 758.010(2) does not resolve who must pay the cost of relocating Verizon's facilities.

**B.  Defendants are not applicants or customers under Verizon's tariff.**

Defendants contend they are not applicants or customers within the meaning of Verizon's tariff, and, therefore, they are not required to pay for relocation of Verizon's facilities under Verizon's tariff.

12 - OPINION AND ORDER

As noted, Verizon's tariff provides in pertinent part:

> When cable/wire is relocated or the type of construction is changed at the applicant/customer's request, the entire cost of removing the old and constructing the new will be borne by the applicant/customer or others requesting the relocation.

Tariffs are public documents setting forth the terms and conditions of the common carrier's services and rates. Tariffs filed with the appropriate utility commission are not merely contracts, but also have the force of law. *Lowden v. Simonds-Shields-Lonsdale Grain Co.*, 306 U.S. 516, 520 (1939). *See also Phillips v. Portland Gen. Elec. Co.*, Order No. 99-327, 1999 Or. PUC LEXIS 262, at *7 (1999); *Carter v. Am. Tel. & Tel. Co.*, 365 F.2d 486, 496 (5th Cir. 1966)("[A] tariff, required by law to be filed, is not a mere contract. It is the law."). In the absence of authority specifying whether Oregon courts interpret utilities tariffs merely as contracts or also as having the force of law like statutes, the Court will apply Oregon's rules of statutory construction to determine whether Defendants are customers or applicants within the meaning of Verizon's tariff.

## 1.    Application of Oregon's rules of statutory construction.

Traditionally, Oregon courts have followed a methodology for interpreting statutes "outlined in *PGE v. Bureau of Labor and Industries*, 317 Or. 606, 610-12, 859 P.2d 1143

13 - OPINION AND ORDER

(1993)."  This methodology

> entails three sequential levels of analysis to
> determine the legislature's intent.  First, the
> court examines the text and context of the
> statute.  *Id*. at 610-11, 859 P.2d 1143.  If the
> legislature's intent is obvious from that first
> level of analysis, "further inquiry is unneces-
> sary."  *Id*. at 611, 859 P.2d 1143.  "If, but only
> if," the legislature's intent is not obvious from
> the text and context inquiry, "the court will then
> move to the second level, which is to consider
> legislative history[.]"  *Id*. at 611, 859 P.2d
> 1143.  If the legislature's intent remains unclear
> after examining legislative history, "the court
> may resort to general maxims of statutory
> construction to aid in resolving the remaining
> uncertainty."  *Id*. at 612, 859 P.2d 1143.

*State v. Gaines*, 346 Or. 160, 164-65 (2009).  In 2009, however,

the Oregon Supreme Court concluded:

> [I]n light of the 2001 amendments to ORS 174.020,
> the appropriate methodology for interpreting a
> statute is as follows.  The first step remains an
> examination of text and context.  *PGE*, 317 Or. at
> 610-11, 859 P.2d 1143.  But, contrary to this
> court's pronouncement in *PGE*, we no longer will
> require an ambiguity in the text of a statute as
> a necessary predicate to the second step --
> consideration of pertinent legislative history
> that a party may proffer.  Instead, a party is
> free to proffer legislative history to the court,
> and the court will consult it after examining text
> and context, even if the court does not perceive
> an ambiguity in the statute's text, where that
> legislative history appears useful to the court's
> analysis.  However, the extent of the court's
> consideration of that history, and the evaluative
> weight that the court gives it, is for the court
> to determine.  The third, and final step, of the
> interpretative methodology is unchanged.  If the
> legislature's intent remains unclear after
> examining text, context, and legislative history,
> the court may resort to general maxims of
> statutory construction to aid in resolving the
> remaining uncertainty.

*Id.* 171-72.

**2.    Interpretation of Verizon's tariff.**

Verizon's tariff defines an applicant as "[a]n individual or concern who (1) applies to the Company for telephone service with a utility or (2) reapplies for service at a new or existing location after service has been discontinued." Reed Decl., Ex. 31. Verizon's tariff defines a customer as "[a] person, firm, partnership, corporation, municipality, cooperative organization, governmental agency etc., who has applied for, been accepted, and is currently receiving service." Reed Decl., Ex. 32. The tariff, however, does not define the term "service."

Defendants point out that they did not apply to Verizon for telephone or telecommunications service, they were not accepted for telephone or telecommunications service, and they did not receive telephone or telecommunications service at any point for the Alexander Street property. Thus, according to Defendants, they are neither applicants nor customers as those terms are defined in Verizon's tariff.

Verizon notes "service" as it applies to utilities under Oregon Revised Statutes is intended to be "used in its broadest and most inclusive sense and includes equipment and facilities related to providing the service or the products served." *See* Or. Rev. Stat. § 756.010(8). The definition of service in § 756.010(8), however, is specifically limited to its

15 - OPINION AND ORDER

use in chapters 756, 757, 758, and 759 of the Oregon Revised
Statutes.  Verizon does not point to any provision of its tariff
that provides or suggests Verizon and the PUC intended to
incorporate in Verizon's tariff the definition of "service" as it
appears in § 756.010(8).  The Court, therefore, considers the use
of the term "service" within the wider context of Verizon's
tariff.

In its tariff, Verizon uses the term "service"
regularly to refer to telecommunications or telephone services
rather than to the relocation of facilities.  For example, in
Section III of the General Regulations in Verizon's tariff,
"Abuse or Fraudulent Use of Service" is defined to include

> the use of service or facilities of the Company to
> transmit a message, or to locate a person, or
> otherwise to give or obtain information, without
> payment of the charge applicable for service;

> the obtaining, or attempting to obtain, or
> assisting another to obtain, or to attempt to
> obtain service, by rearranging, tampering with, or
> making connection with any facilities of the
> Company, or by any trick, scheme, false repre-
> sentation, or false credit device, or by or
> through any other fraudulent means or device
> whatsoever, with intent to avoid the payment, in
> whole or in part, of the regular charge for such
> service;

> the use of service or facilities of the Company
> for a call or calls, anonymous or otherwise, if in
> a manner reasonably expected to frighten, abuse,
> torment, or harass another;

> the use of profane language;

> the use of the service in such manner as to

16 – OPINION AND ORDER

> interfere unreasonably with the use of the service
> by other customers;
>
> the use of a switching system to automatically
> connect an incoming call to an outgoing private
> line or foreign exchange line to permit the
> incoming caller to extend a call to a distant
> location over these facilities is considered to be
> switching of calls, a service normally performed
> by the Company.

P.U.C. OR. 18, Section III, Orig. Sheet 8.  Similarly, the
General Regulations of Verizon's tariff also specify "grounds for
disconnection of service" and provide Verizon "may terminate the
service and remove its equipment" under certain conditions.
P.U.C. OR. 18, Section III, Orig. Sheet 11.  In addition,
Verizon's tariff contains several references to disconnecting
service, which uniformly refer to disconnecting access to
telephone lines and services rather than moving facilities.

Based on the use of the term "service" throughout
Verizon's tariff and absent any clarifying definition of the term
within the tariff, the Court finds "service" under the Verizon
tariff does not include relocating facilities.  Accordingly, the
Court concludes Verizon has not established that Defendants were
applicants or customers of Verizon or that the portion of
Verizon's tariff requiring customers or applicants to pay "[w]hen
cable/wire is relocated or the type of construction is changed at
the applicant/customer's request" applies to Defendants under the
circumstances of this case.

17 - OPINION AND ORDER

**C.    Defendants are not "others requesting the relocation."**

Verizon contends even if Defendants are not customers or applicants as defined in its tariff, they are still "others requesting the relocation."  Defendants, however, assert "others requesting the relocation" is a dependent clause that describes who must pay when a cable or wire is relocated at the request of an applicant or customer.  In essence, Defendants request the Court to read the provision as follows:  "If a cable/wire is relocated . . . at the applicant/customer's request, then the entire cost of removing the old and constructing the new will be borne by the applicant/customer or others requesting the relocation."  According to Defendants, therefore, only when an applicant or customer has requested relocation must payment for the relocation be made by the applicant, customer, or "others" requesting the relocation.  The Court notes, however, under Defendants' interpretation the provision would not ultimately apply if a third party requested the relocation, and, as a result, the third party requesting relocation would never be liable for payment under that provision.  Thus, Defendants' suggested interpretation would result in ignoring the phrase "others requesting relocation."

Verizon, on the other hand, argues the Court should read the provision at issue as "the entire cost of removing the old and constructing the new will be borne by the

18 - OPINION AND ORDER

applicant/customer or others requesting the relocation."
Verizon's interpretation, however, essentially ignores the
following language in the first part of the paragraph:  "When
cable/wire is relocated or the type of construction is changed at
the applicant/customer's request . . . ."

Under Oregon's rules of statutory construction, the
phrase "others requesting the relocation" must be given effect if
possible.  *See* Or. Rev. Stat. § 42.230 ("In the construction of
an instrument, the office of the judge is simply to ascertain and
declare what is, in terms of substance, contained therein . . .;
and where there are several provisions or particulars, such
construction, if possible, to be adopted as will give effect to
all.").  The language at issue here is internally inconsistent,
and it is clearly susceptible to more than one interpretation.
In addition, the record does not reflect any history that
illuminates Verizon's intent in drafting the language at issue
nor the PUC's intent in approving it.  Moreover, the record
does not provide any basis for concluding either one of the
interpretations should prevail.  The Court, therefore, turns to
the principles of contract construction to resolve the issue.

As noted, although it is unclear whether Verizon's
tariff should be considered merely a contract, Oregon courts have
applied rules of contract interpretation to tariffs in the past.
*See, e.g., Green Mountain Log Co. v. Columbia & Nehalem River*

19 – OPINION AND ORDER

*R.R.*, 146 Or. 461, 471 (1934).  Under Oregon contract law, if a
contract provision is ambiguous on its face, the court proceeds
to examine the disputed provision "in the broader context of the
[contract] as a whole.  If - and only if - the ambiguity
persists, [the court] construe[s] the [contract] against the
drafter."  *Rick Franklin Corp. v. State ex rel. Dep't of Transp.*,
207 Or. App. 183, 195 n.8 (2006)(citations omitted).  Here
because the provision at issue is ambiguous and both interpre-
tations suggested by the parties are problematic, the Court
applies the rule of contract interpretation set out in *Rick
Franklin* and interprets this provision against Verizon as the
drafter of the tariff.

        Accordingly, the Court concludes Verizon's tariff does
not require payment for relocation of Verizon's facilities by
Defendants because they are not customers or applicants or
"others requesting the relocation" as defined by the tariff.  The
Court, therefore, denies Verizon's Motion for Summary Judgment as
to its tariff claim and grants Defendants' Motions for Summary
Judgment as to Verizon's claim for collection of its tariff.

**II.  *Quantum Meruit*.**

        Defendants also seek summary judgment against Verizon's
*quantum-meruit* claim on the grounds that Verizon has not
established it conferred a benefit on Defendants or, in the
alternative, it would be unjust for Defendants to pay for the

20 - OPINION AND ORDER

relocation of Verizon's facilities.

> A claim for *quantum meruit* is a quasi-contractual
> claim. *Robinowitz v. Pozzi*, 127 Or. App. 464,
> 467, 872 P.2d 993, *rev. den.*, 320 Or. 109, 881
> P.2d 141 (1994).  The elements of the claim are a
> benefit conferred, awareness by the recipient that
> a benefit has been received, and judicial
> recognition that, under the circumstances, it
> would be unjust to allow retention of the benefit
> without requiring the recipient to pay for it.
> *Jaqua v. Nike, Inc.*, 125 Or. App. 294, 298, 865
> P.2d 442 (1993).

*Safeport, Inc. v. Equip. Roundup & Mfg., Inc.*, 184 Or. App. 690,

706 (2002).

### A.    **Benefit conferred**.

Defendants acknowledge the Alexander Street property

and its future homeowners derive a benefit from the relocation of

Verizon's facilities and subsequent street improvements.

Defendants, however, assert Washington County is the primary

beneficiary.  Defendants point to the remarks of Washington

County Engineer Greg Miller before the Washington County Board of

Commissioners to support their assertion that the relocation of

Verizon's facilities benefitted Washington County rather than

Defendants.  The minutes of the Washington County Board of

Commissioners' meeting report Miller's remarks as follows:

> [T]his road improvement is to benefit the public.
> He observed that there is no benefit to the
> developer; in fact, it will cost him a good deal
> of money.  Mr. Miller explained that it does not
> provide access to [the] development.  He added
> that had the developer not been conditioned to do
> this road improvement, he would not be doing it.

21 - OPINION AND ORDER

Parties' Stipulated Agreed Facts, Ex. 7 at 2.  Thus, according to

Defendants, the relocation did not benefit Defendants as required

under *Safeport*.

> Although Verizon agrees the public may have benefitted
from the widening of the road and, by extension, from the
relocation of Verizon's facilities, Verizon asserts Defendants as
the property developers were the primary beneficiaries because
they could not have gone forward with the development without
widening the road.  Verizon cites a number of cases to support
its assertion that Defendants were the primary beneficiaries,
and, therefore, that Verizon is entitled to *quantum meruit*.  As
the Court noted at oral argument, however, the majority of cases
cited by Verizon are from states other than Oregon in which the
courts relied on either the common laws or statutes and
regulations of those states.  Thus, those cases do not inform the
Court as to the law in Oregon.  Verizon, however, also cites two
Oregon cases to support its assertion:  *Northwest Natural Gas Co.
v. City of Portland*, 300 Or. 291, 293 (1985), and *Multnomah
County v. Rockwood Water District*, 219 Or. 356 (1959).

> In *Northwest Natural*, the City of Portland compelled
various utilities to relocate their facilities that were within
public rights-of-way to accommodate construction of the light
rail.  300 Or. at 293.  The Oregon Supreme Court limited its
review to whether "the utilities are entitled to compensation for

22 - OPINION AND ORDER

relocation of their facilities that lie within the public rights-of-way in the City of Portland" and ultimately held the utilities were not. *Id.* at 293-94.  The court rejected the governmental/proprietary distinction used to decide "mass transit/utility relocation cases." *Id.* at 302.  The court found the resolution of who must pay depends on two things: "(1) the sources governing the authority of the City of Portland to require the utilities to relocate in aid of Tri-Met, and (2) the specific franchises of the utilities." *Id.* at 303.  The court reviewed Oregon statutes and Portland's City Code and determined that in combination they authorized the City to order uncompensated relocation when it is for the public benefit. *Id.* at 307.  The court then reviewed the utilities' specific franchise agreements and concluded the City was authorized to order relocation of utilities facilities for the light-rail project and to require the utilities to pay the costs of such a relocation. *Id.* at 311.

As this Court noted at oral argument, however, the Oregon Supreme Court's holding in *Northwest Natural* is of limited relevance to the issues here because the facts are distinguish-able from this case.  For example, *Northwest Natural* involved a dispute between a governmental entity and utilities rather than a dispute between a utility and a private developer.  In addition, *Northwest Natural* turned on the interpretation of Portland's City

23 - OPINION AND ORDER

Code and Oregon statutes related to utilities' obligations within
the City of Portland.  Thus, the Court concludes the principles
set out in *Northwest Natural* do not resolve the issues in this
case.  The Court also notes the Oregon Supreme Court in *Northwest
Natural* rejected the proprietary/governmental test applied in
*Rockwood*, and, therefore, this Court concludes *Rockwood Water
District* also is not helpful in determining whether and to whom a
benefit was conferred in this matter and whether Defendants are
required to pay Verizon for the relocation of its facilities.

In addition to their other arguments, Defendants
contend Washington County had a general street-development plan
that called for the widening of the street at some point.
According to Defendants, therefore, Verizon would have had to
move their facilities in any event, and, therefore, the fact that
Verizon moved them to accommodate Defendants' project does not
establish Defendants were the primary beneficiaries.  The record,
however, does not reflect Washington County had any immediate or
concrete plans to widen the road.

In summary, the Court concludes on this record there is
sufficient evidence that a benefit was conferred on Defendants
because Defendants could not move forward with their development,
which required widening the road, until after Verizon relocated
its facilities.

24 - OPINION AND ORDER

**B.    Awareness that a benefit has been received.**

Defendants do not contend they were unaware that Verizon moved its facilities or that they received some benefit.

**C.    Retention of benefit.**

As noted, the Court must determine whether it would be unjust to allow Defendants to retain the benefit without requiring Defendants to pay for it.  *Safeport,* 184 Or. App. at 706.

> For an injustice to be found, one of three things must be true:
>
> (1) the plaintiff had a reasonable expectation of payment;
>
> (2) the defendant should reasonably have expected to pay; or
>
> (3) society's reasonable expectations of security of person and property would be defeated by nonpayment.

*Jaqua,* 125 Or. App. at 298 (quotations omitted).

Here Verizon relied on its interpretation of its tariff and past practices and believed Defendants would have to pay for the relocation.  Defendants, in turn, relied on their interpretation of Verizon's tariff as well as their past practices and believed they would not have to pay for the relocation of Verizon's facilities.  Whether on this record any of the parties' beliefs were reasonable is an issue of fact to be resolved by the trier of fact.  The Court, therefore, concludes Defendants, as the moving parties, have not established Verizon's

25 - OPINION AND ORDER

expectation that Defendants would have to pay for the relocation of its facilities was unreasonable.  In addition, the Court also concludes the record does not establish Defendants' belief that they would not have to pay for the relocation was unreasonable. Thus, the Court turns to the third method under *Jaqua* to determine whether it would be unjust to allow Defendants to retain a benefit without requiring them to pay for it.

Defendants assert society's "reasonable expectations of security of person or property" would not be defeated if Verizon paid for the relocation because Verizon has the "right and privilege to construct, maintain and operate its . . . communication service lines, fixtures and other facilities along the public roads in [Oregon] . . . free of charge" under Oregon Revised Statute § 758.010(1).  According to Defendants, Verizon's "payment is merely satisfaction of [its] end of the bargain [with the State]."  Defendants argue society's reasonable expectations of security of person or property would be thwarted and Verizon would receive a windfall if Verizon received "both the benefit of placing its facilities in the right-of-way free of charge and the benefit of escaping liability for relocation costs when the adjacent land improves."

Verizon, however, asserts society's reasonable expectations of security of person or property would be defeated if Verizon had to pay the costs of relocating its facilities

26 - OPINION AND ORDER

because those costs would ultimately be borne by all of its
ratepayers who did not receive any direct benefit from
Defendants' development.  In addition, Verizon asserts the fact
that § 758.010(1) allows Verizon to place its facilities on
public roads in Washington County reflects a public-policy
decision made by the Oregon Legislature to further its stated
goal "to secure and maintain high-quality universal tele-
communications service at just and reasonable rates for all
classes of customers."  *See* Or. Rev. Stat. § 759.015.  Moreover,
Verizon had to incur the cost of installing its facilities in the
first place.  Thus, according to Verizon, allowing it to place
its facilities on public roads and requiring private developers
to pay for relocation of those facilities when necessary for
private development is not a windfall for Verizon.

     In addition, the Court finds Oregon Revised Statute
§ 758.010(1) was not intended to protect or to regulate private
developers in general or entities and persons like Defendants.
Instead § 758.010(1) merely shows it would *not* be unjust to allow
the County or the State to retain the benefit of the relocation
of Verizon's facilities without requiring them to pay for it.

     Verizon also points out that Defendant Vatheuer entered
into a Public Improvement Contract with Washington County in
which he agreed to "provide public improvements [as noted] in
conformance with [the Community Development Code] and agree[d] to

27 - OPINION AND ORDER

maintain an assurance in the amount of $70.020.00."  Vatheuer
also agreed "if work on the subject improvements of this contract
[was] abandoned, incomplete or deficient . . . after March 30,
2008, County may collect the assurance described."  According to
Verizon, therefore, society's reasonable expectations of security
or property include an expectation that Defendants would pay for
the necessary improvements, which entailed widening the road and,
by extension, relocating Verizon's facilities.

Finally, Verizon contends "society's reasonable
expectations of security of person or property" would not be
compromised if Defendants paid for the relocation of Verizon's
facilities because there is not any evidence that Washington
County would have required Verizon to relocate its facilities
"but for" Defendants' proposed development.

On this record, the Court concludes there are genuine
issues of material fact that preclude summary judgment as to
whether the expectations of the parties were reasonable and
whether it would be unjust to allow Defendants to retain the
benefit of Verizon's relocated facilities without requiring
Defendants to pay for it.  Accordingly, the Court denies
Defendants' Motions for Summary Judgment as to Verizon's claim
for *quantum meruit*.

### III. Vatheuer's Counterclaim for Trespass.

Verizon moves for summary judgment as to Vatheuer's trespass

28 - OPINION AND ORDER

Counterclaim on the ground that Verizon had consent to relocate its facilities within the area of Vatheuer's property.

In his Counterclaim, Vatheuer alleges:

> In or around September 2008, plaintiff, without permission from Vatheuer, placed a utility line and a large utility box ("the Facilities") within the clearly marked boundary of the Alexander Street Property.  The land onto which Verizon placed the Facilities was not subject to any legally recorded easement or public right-of-way, but was private property under the exclusive ownership and possession of Vatheuer.
>
> When installing the Facilities, plaintiff entered onto Vatheuer's private property without permission, constituting an invasion of Vatheuer's protected interest in the exclusive possession of his property.
>
> Plaintiff's Facilities are permanent in nature and constitute a continuing trespass upon Vatheuer's private property.
>
> Vatheuer was damaged by plaintiff's trespass and continues to be damaged by plaintiff's failure to compensate him for the use of his land to the approximate sum of $10,000.00.

Vatheuer's Answer, Affirmative Defenses and Counterclaim ¶¶ 22-25.  Vatheuer asserts Verizon did not have consent to enter the Alexander Street property and, even if Verizon had consent, it exceeded the scope of that consent.  Specifically, Vatheuer asserts "without notice of when Verizon intended its construction, Defendants would be unable to ensure the property was properly prepared for the construction and safe for Verizon to enter the property."

To establish the tort of trespass under Oregon law, Vatheuer

29 - OPINION AND ORDER

must establish an "intentional, physical intrusion by [Verizon] on [Vatheuer's] property . . . which causes damage to [Vatheuer] and which has not been authorized or consented to by [Vatheuer]." *See Huffman and Wright Logging Co. v. Wade*, 317 Or. 445, 469 n.8 (1993). Consent is a defense to an action for trespass. *Hager v. Tire Recyclers, Inc.*, 136 Or. App. 439, 443 (1995). If a trespasser had the landowner's consent to enter upon the land for a particular purpose, the landowner cannot maintain an action for trespass. *Hawkins v. Barber*, 263 Or. 416, 418 (1972). Establishing consent requires evidence of "actual willingness" on the part of the property owner to allow the trespasser to "engage in the particular type of entry." *Colmus v. Sergeeva*, 175 Or. App. 131, 135 (2001). Consent may also be inferred from a landowner's silence or inaction if the landowner has actual knowledge of the trespasser's intention to enter. *Id. See also Hager*, 136 Or. App. at 443.

Here it is undisputed that Main Street Development's counsel told Verizon in his October 15, 2007, letter, that Verizon needed to relocate its facilities and to coordinate with Miller as to the new location. According to Verizon, under County Community Development Code Article VI 605-3.3 and 605-3.4, the only place to relocate their facilities was within the "P.U.E., exactly where the lines were put." When Verizon submitted its relocation plans to Washington County for the required permit, Vatheuer did

not object to those plans other than to comment that the relocation was taking too long.

Verizon also points out that Oregon Revised Statute § 759.075 grants a limited license for telecommunications companies to enter lands within Oregon for the purpose of constructing service facilities as follows:

> (1) Any telecommunications utility may:
>
>> (a)  Enter upon lands within this state for the purpose of examining, locating and surveying the line thereof and also other lands necessary and convenient for the purpose of construction of service facilities, doing no unnecessary damage thereby.

With respect to utilities companies entering property "to do acts" without possessing an interest in the land, Verizon notes the Oregon Supreme Court has long held:

> A license is defined as a personal, revocable, and unassignable privilege conferred either by writing or parol to do one or more acts on land without possessing any interest therein.  It is a distinguishing characteristic of a license that it gives no interest in the land and it may rest in parol. . . .  *It is an authority to do a lawful act, which, without it, would be unlawful; and, while it remains unrevoked, is a justification for the acts which it authorizes to be done.* According to this principle, a bare parol license, though without consideration, will furnish a justification for an act which would otherwise be a trespass.

*Schiffmann v. Hickey*, 101 Or. 569, 601 (1921)(emphasis added). According to Verizon, therefore, its presence on Vatheuer's property for the purpose of relocating its facilities was

31 - OPINION AND ORDER

authorized by § 759.075.

Verizon also notes there is not any evidence in the record that (1) Defendants asked for advance notice before Verizon completed the relocation; (2) Defendants set any conditions on Verizon's performance of the work (other than the payment issue); or (3) Defendants objected to Verizon's work before, during, or after it was completed until Vatheuer filed his Counterclaim to Verizon's First Amended Complaint on June 30, 2009.

On this record, the Court concludes there is not any issue of material fact as to whether Verizon's presence on Vatheuer's property for the purpose of relocating its facilities was authorized by statute and Vatheuer has failed to establish there is any factual basis on which a rational trier of fact could find the absence of consent.  Accordingly, the Court grants Verizon's Motion for Summary Judgment as to Vatheuer's Counterclaim for trespass on the basis that Vatheuer cannot show Verizon's entry on to the property was unauthorized.


## CONCLUSION

For these reasons, the Court **GRANTS in part** and **DENIES in part** Verizon's Motion (#27) for Partial Summary Judgment as follows:

1. **GRANTS** Verizon's Motion as to Defendant Vatheuer's Counterclaim for trespass and

32 – OPINION AND ORDER

2.    **DENIES** Verizon's Motion as to its claim for enforcement
of tariff.

The Court **GRANTS in part** and **DENIES in part** the Cross-Motion
(#36) for Summary Judgment of Defendants Main Street/Vatheuer
Partnership and Hans J. Vatheuer as follows:

1.    **GRANTS** Defendants' Cross-Motion as to Verizon's claim
for enforcement of tariff and

2.    **DENIES** Defendants' Cross-Motion as to Verizon's claim
for *quantum meruit*.

The Court **GRANTS in part** and **DENIES in part** Defendant Main
Street Development's Cross-Motion (#54) for Summary Judgment as
follows:

1.    **GRANTS** Defendant's Cross-Motion as to Verizon's claim
for enforcement of tariff and

2.    **DENIES** Defendant's Cross-Motion as to Verizon's claim
for *quantum meruit*.

The Court **DIRECTS** the parties to confer concerning further
proceedings needed to resolve Verizon's *quantum meruit* claim and
to submit a joint status report to the Court no later than
**March 12, 2010**, providing a joint proposed schedule on which to

33 - OPINION AND ORDER

proceed.

IT IS SO ORDERED.

DATED this 25th day of February, 2010.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District